UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JAQUAN M.,[1]

                              Plaintiff,                      DECISION AND ORDER

-vs-

                                                                  19-CV-6463 (CJS)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

---

INTRODUCTION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., Mar. 5, 2020, ECF No. 14; Def.'s Mot., Jul. 6, 2020, ECF No. 19. Plaintiff argues that the Commissioner's denial of his application for DIB and SSI benefits should be reversed because the Commissioner's decision is not supported by substantial evidence. Consequently, he requests that the case be remanded solely for the calculation of benefits or, in the alternative, for further administrative proceedings pursuant to 42 U.S.C. § 405(g).

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

The Commissioner disputes Plaintiff's contentions, and maintains that the ALJ's decision is free of legal error and supported by substantial evidence.

For the reasons set forth below, Plaintiff's motion for judgment on the pleadings [ECF No. 14] is granted in part, and the Commissioner's motion [ECF No. 19] is denied. The matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Decision and Order.

## LEGAL STANDARD

The law defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to qualify for DIB benefits, the DIB claimant must satisfy the requirements for a special insured status. 42 U.S.C. § 423(c)(1). In addition, the Social Security Administration has outlined a "five-step, sequential evaluation process" to determine whether a DIB or SSI claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537

F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)).

The claimant bears the burden of proof for the first four steps of the sequential evaluation. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner only to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Asture*, 566 F.3d 303, 306 (2d Cir. 2009).

## PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

Plaintiff protectively filed his DIB and SSI applications on January 14, 2016, alleging an onset date of August 31, 2015. Transcript ("Tr."), 286–289, Sept. 20, 2019, ECF No. 7. In his applications, Plaintiff alleged that his ability to work was limited by a slipped disc in his lower back, sleep apnea, depression, morbid obesity, hypertension, and sciatica. Tr. 373. On April 28, 2016, the Commissioner notified Plaintiff of the determination that Plaintiff was not disabled, and that he did not qualify for either DIB or SSI benefits. Tr. 208. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 219.

Plaintiff's request was approved, and the hearing was held in Rochester, New York on August 15, 2018. Tr. 139. Plaintiff – who was 28 years old at the time, stood six feet, two inches tall, and weighed 435 pounds – appeared with his counsel, and an

3

impartial vocational expert was also present. Tr. 139, 152. During the hearing, the ALJ directed Plaintiff to "[t]ell me in your own words what prevents you from working now." Tr. 162. The following exchange ensued:

> [Plaintiff:] Just trying to get moving throughout the day, I can't really do much moving. After about an hour or two, it's like my body just gives out.
>
> [ALJ:] An hour or two of what?
>
> [Plaintiff:] Doing . . . just manual labor and stuff around the house.
>
> [ALJ:] Like what? What are you doing?
>
> [Plaintiff:] Cleaning. Trying to get stuff picked up. Trying to do the laundry.
>
> [ALJ:] So, you're doing those things?
>
> [Plaintiff:] Yes.
>
> [ALJ:] And then what happens?
>
> [Plaintiff:] I have to lay down and sit down, because my back starts hurting so bad that it cramps up.

Tr. 162.

In his decision on August 22, 2018 denying DIB and SSI benefits to Plaintiff, the ALJ found that Plaintiff met the special insured status requirements of the Social Security Act through September 30, 2017. Tr. 118. At step one of the five-step evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 31, 2015, the alleged onset date. Tr. 118.

At step two, the ALJ determined that Plaintiff has several severe impairments: degenerative disc disease of the lumbar spine, degenerative joint disease of the right knee, sleep apnea, obesity, hypertension, affective disorder, and gastroesophageal reflux disease. Tr. 118. The ALJ also found that Plaintiff has non-severe hematuria. Tr. 119. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 119. In so doing, the ALJ utilized the "special technique" required by 20 C.F.R. § 404.1520a,[2] and determined that Plaintiff's alleged mental impairments caused mild limitations in understanding, remembering, or applying information, interacting with others, and adapting or managing himself. Tr. 120. The alleged mental impairments caused a moderate limitation with regard to concentrating, persisting, or maintaining pace. Tr. 120.

Then, before proceeding to step four, the ALJ carefully considered the entire record and determined that Plaintiff had the residual functional capacity[3] ("RFC") to

---

[2] The listings of specific mental impairments in 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 ("App'x 1 § 12.00") provide the ALJ with detailed guidance for application of the "special technique." Generally, a claimant must satisfy at least two classes of criteria to justify a finding of a mental disorder. "Paragraph A" criteria include the "the medical criteria that must be present in [a claimaint's] medical evidence" to indicate a particular disorder (e.g., the mental disorder of "schizophrenia" requires that the evidence include medical documentation of hallucinations or another similar symptom). App'x 1 § 12.00A(2)(a). "Paragraph B" criteria are the four functional areas of (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. App'x 1 § 12.00A(2)(b). "Paragraph C" criteria are used to evaluate whether a claimant has a "serious and persistent" mental disorder.

[3] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545, § 416.945.

5

perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and § 416.967(a), with the following limitations:

> [H]e can lift up to 10 pounds occasionally, frequently lift less than ten pounds, and sit for six hours and stand for two hours in an eight-hour workday. The claimant requires a sit and stand option that allows for changing position every 60 minutes for up to five minutes. The claimant cannot climb a rope, ladder, or scaffolds, and balance on narrow, slippery, or moving surface. The claimant can occasionally stop and crouch. The claimant can frequently climb stairs or ramps, kneel, and crawl. The claimant needs to avoid open hazards such as open water or unprotected heights. Finally, the claimant can perform simple rote tasks, adjust to changes in work setting, and make simple-work related decisions.

Tr. 121. Based on this RFC, at step four the ALJ found that Plaintiff is unable to perform his past relevant work. Tr. 126. However, based on Plaintiff's age, education, and experience, and on the testimony of the impartial VE, the ALJ found Plaintiff would be able to perform such jobs in the national economy as a document preparer, a dresser, and a food and beverage order clerk. Tr. 127. Hence, the ALJ concluded that Plaintiff *is not* disabled for the purposes of DIB or SSI. Tr. 128.

On April 26, 2019, the Social Security Administration's Appeals Council denied Plaintiff's request for further review of the ALJ's decision. Tr. 1. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## DISCUSSION

42 U.S.C. § 405(g) defines the process and scope of judicial review of the final decision of the Commissioner on whether a claimant has a "disability" that would

entitle him or her to DIB and SSI benefits. *See also* 42 U.S.C. § 1383(c)(3). "The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the Secretary, and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted).

Hence, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, the reviewing court must first determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the correct legal standards are applied, the court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The substantial evidence standard means that once an ALJ finds facts, a reviewing court can reject those facts "only if a

reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448 (citation omitted). To determine whether a finding, inference or conclusion is supported by substantial evidence, "[t]he Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Tejada*, 167 F.3d at 774 (quoting *Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir. 1997)).

Plaintiff maintains that the Commissioner's decision denying him DIB and SSI benefits must be remanded for calculation of benefits or for further administrative proceedings because the ALJ was in error, and because his decision was not supported by substantial evidence. Pl. Mem. of Law, Mar. 5, 2020, ECF No. 14-1. Specifically, Plaintiff argues that (1) the ALJ committed error when he failed to assign controlling weight to any medical opinion but included highly specific restrictions in his RFC determination; (2) the ALJ committed error when he relied on a vague opinion from the consultative examiner to support his RFC; and (3) the ALJ failed to properly weight a treating physician opinion.

<u>The ALJ's Treatment of the Medical Opinions in the Record</u>

In his decision, the ALJ weighed four medical opinions: Austin Small, Ph.D. the non-examining state agency psychological consultant; Harbinder Toor, M.D., the consultative medical examiner; Adam Brownfield, Ph.D., the consultative psychological examiner; and Drew Emerson, M.D., Plaintiff's primary care physician. Tr. 125–126. The ALJ assigned "little weight" to Dr. Small's opinion, "some weight"

8

to Dr. Toor's opinion, "more weight" to Dr. Brownfield's opinion, and "some weight" to Dr. Emerson's opinion. Tr. 125–126. Plaintiff maintains that in failing to assign controlling weight to any of the medical opinions – particularly in light of the specificity of the RFC determination that Plaintiff "requires a sit and stand option that allows for changing position every 60 minutes for up to five minutes" (Tr. 121) – the ALJ committed legal error by improperly relying on his own interpretation of the raw medical record. Pl. Mem. of Law at 14–18.

At the outset, the Court finds that Plaintiff's general argument that the ALJ must base his RFC finding on a specific medical opinion is without merit. "The RFC assessment is a function-by-function assessment based upon *all of the relevant evidence* of an individual's ability to do work-related activities." *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P, 1996 WL 374184 at *1 (S.S.A. July 2, 1996) (emphasis added). In assessing a claimant's abilities for his or her RFC, the ALJ must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. 20 C.F.R. § 404.1545(b) and 416.945(b). Thereafter, the ALJ may classify "a claimant's RFC based on exertional levels of work (i.e., whether the claimant can perform sedentary, light, medium, heavy, or very heavy work)." *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013). The ALJ's conclusion in this regard need not perfectly correspond with any of the opinions of the medical sources cited in his or her decision, so long as he or she has "weigh[ed] all of the evidence available to

make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).

Nevertheless, the Court does find merit in Plaintiff's more specific argument that the ALJ's RFC finding that Plaintiff "requires a sit and stand option that allows for changing position every 60 minutes for up to five minutes" was not supported by substantial evidence. Plaintiff bases his argument on the Second Circuit's decision in *Cosnyka v. Colvin*, 576 F. App'x 43 (2d Cir. 2014). In *Cosnyka*, the ALJ had determined that the claimant would be off-task for ten percent of the workday, and that this "off-task" time translated to six minutes out of every hour. *Id.* at 46. After review of the medical evidence in the record, the Second Circuit concluded:

> There is no evidence in the record to the effect that Cosnyka would be able to perform sedentary work if he could take a six-minute break every hour, rather than some other duration and frequency amounting to ten percent of the workday. Indeed, there is evidence in the record to the contrary, as Cosnyka testified that he would need a 15–20 minute break. Accordingly, we find that there was no basis for the ALJ to incorporate this "six minutes per hour" formulation into the RFC finding.
>
> * * * *
>
> Because there is no substantial evidence for the ALJ's six-minutes per hour formulation, and this formulation was crucial to the vocational expert's conclusion that there were jobs Cosnyka could perform, we cannot uphold the ALJ's decision to reject Cosnyka's claim for benefits.

*Id.* at 46.

Although the Commissioner counter-argues that the ALJ's RFC finding that Plaintiff is capable of sedentary work is, in fact, supported by substantial evidence, the Commissioner fails to adequately show support for the ALJ's determination that

Plaintiff must able to change positions every 60 minutes for up to five minutes each time. In the present case, as in *Cosnyka*, there is evidence in the record to the contrary. Dr. Toor's opinion that Plaintiff only "has moderate to marked limitation standing, walking, bending, and lifting . . . . [and] moderate limitation sitting a long time," in combination with moderate findings in the treatment notes of several care providers, together constitute substantial evidence supporting the ALJ's finding that Plaintiff is capable of sedentary work. *See, e.g.,* Tr. 660. However, the only evidence of record regarding the time that Plaintiff would require to change positions each hour indicate that it would take Plaintiff substantially longer than five minutes: Dr. Emerson indicated in his August 2018 medical source statement that it could take Plaintiff as long as 30 minutes (Tr. 750) to rest and change positions, and Plaintiff himself testified that it could take "over an hour" (Tr. 153). In addition, as in *Cosnyka*, the ALJ's five-minutes per hour formulation was crucial to the vocational expert's conclusion that there were jobs in the national economy Plaintiff could perform. Tr. 178–79.

Despite the discrepancy between his determination and the other evidence in the record, the ALJ failed to provide a clear explanation of how he arrived at five minutes as the appropriate time for Plaintiff's change of position each hour. Consequently, the Court is left to guess at how the ALJ arrived at that restriction. The ALJ is not obligated to reconcile explicitly every conflicting shred of medical testimony, but he is required to provide an explanation that allows the Court to

understand the rationale behind the restrictions he imposes in his RFC determination. *See Dioguardi v. Commissioner*, 445 F. Supp.2d 288, 297 (W.D.N.Y. 2006) (citing, *inter alia*, *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)). Accordingly, this case must be remanded for the limited purpose of reassessing Plaintiff's RFC and providing a more complete explanation for the finding that Plaintiff needs up to five minutes per hour to change position.

The ALJ's Treatment of Dr. Toor's Opinion

In discussing Dr. Toor's opinion based on his consultative medical examination of Plaintiff, the ALJ noted that "Dr. Toor's opinion has vague terms, and lack[s] specific details or assessment of [Plaintiff]'s function-by-function limitations." Tr. 125. Nevertheless, the ALJ also noted that Dr. Toor's "observations lend support to the restriction of sedentary exertion," and therefore gave Dr. Toor's opinion "some weight." Tr. 125–126. Plaintiff maintains that this was error because "[a] doctor's vague opinion does not constitute substantial evidence to support an ALJ's RFC determination." Pl. Mem. of Law at 19 (citing *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013)).

Plaintiff's argument that Dr. Toor's opinion is vague, and therefore does not constitute substantial evidence, is inapposite. *See Johnson v. Colvin*, 699 F. App'x 44, 46–47 (2d Cir. 2016). While Dr. Toor's medical opinion alone may be inadequate to support the ALJ's finding that Plaintiff is capable of performing sedentary work, there is nothing in the opinion that renders it *per se* unfit for consideration. As

indicated above, an ALJ is required to assess a claimant's residual functional capacity "based on *all the relevant evidence*" in the claimant's case record. 20 C.F.R. § 404.1545(a)(1) (emphasis added). Because Dr. Toor is an "acceptable medical source" pursuant to 20 C.F.R. § 404.1502(a), and because the ALJ's RFC discussion in this case alluded to evidence from multiple other sources to support his determination – including treatment notes from Dr. Emerson (Tr. 123–124, 126), Dr. Howard Menzei (Tr. 124), certified physician's assistants[4] Martha Yanda and Lauren LaFrance (Tr. 123), and physical therapist Johanna Kaufmanan [sic] (Tr. 124)– there was nothing improper about the ALJ's consideration of Dr. Toor's opinion.

The ALJ's Treatment of Dr. Emerson's Opinion

Finally, in reviewing Dr. Emerson's multiple opinions in the record that Plaintiff is disabled, the ALJ stated that "Dr. Emerson's opinions contradict each other and [are] inconsistent with the medical record." Tr. 126. Additionally, the ALJ noted that a finding of disability is reserved to the Commissioner. Tr. 126. Accordingly, the ALJ only gave Dr. Emerson's opinion "some weight," even though Dr. Emerson was Plaintiff's primary care physician. Tr. 126. Plaintiff argues that the "appropriate factors supported giving [Dr. Emerson's] opinion controlling weight," and that failure to so weight the opinion was error. Pl. Mem. of Law at 22–23.

20 C.F.R. § 404.1527(c)(2) requires that a treating source's medical opinion be given controlling weight if it is "well-supported by medically acceptable clinical and

---

[4] For claims, such as Plaintiff's, which were filed before March 27, 2017, a physician's assistant is not an "acceptable medical source." *See* 20 C.F.R. § 404.1502(a)(8).

13

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . . ." When controlling weight is not given to a treating physician's assessment, the ALJ must consider the following factors to determine the weight to give the opinion: (1) the length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence in support of the opinion; (4) the opinion's consistency with the record as a whole; (5) whether the opinion is that of a specialist; and (6) any other relevant factors. 20 C.F.R. § 404.1527(c). The ALJ must then "comprehensively set forth [the] reasons for the weight assigned to a treating physician's opinion." *Burgess*, 537 F.3d 117, 129 (2d Cir. 2008).

Here, the record shows that there was no reversible error in the ALJ's decision not to give controlling weight to Dr. Emerson's opinion. The ALJ recognized that Dr. Emerson had a long-standing treatment relationship with Plaintiff, and had provided care for such varied ailments as back and knee pain, hypertension, gastroesophageal reflux disease, and obesity. Tr. 123–124, 126. Nevertheless, the ALJ also pointed out that Dr. Emerson's multiple opinions in the record "contradict each other and [are] inconsistent with the medical record." Tr. 126. For instance, despite Dr. Emerson's general statements in September 2016, February 2017, and August 2017 that Plaintiff "continues to be temporarily unable to work due to low back pain" (Tr. 679), the ALJ observed that Dr. Emerson's treatment notes from "physical evaluations from September 2016 to February 2017 showed that claimant remained physically

14

stable . . . . [and d]uring physical evaluations from April 2017 to August 2017, [Plaintiff] reported to Dr. Emerson that he was 'doing better.'" Tr. 124 (providing examples from Dr. Emerson's treatment notes at Tr. 704–746). Moreover, as the ALJ also pointed out, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1527(d). Accordingly, the Court finds the ALJ's decision not to give controlling weight to Dr. Emerson's opinion was acceptable. *See, e.g., Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7–8 (2d Cir. 2017) (affirming the ALJ's decision not to give controlling weight to a treating physician's opinion where the opinion "contained internal inconsistencies").

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiff's motion for judgment on the pleadings [ECF No. 14] is granted in part, and the Commissioner's motion for judgment on the pleadings [ECF No. 19] is denied. This matter is remanded to the Commissioner pursuant to 42 U.S.C. 405(g), sentence four, for the limited purpose of reassessing Plaintiff's RFC prior to his date last insured and providing a more thorough explanation of the RFC determination.

DATED:   March 11, 2021
         Rochester, New York

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge